UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br>　　v.<br>MARKQUEZ BARNES,<br>　　　　　Defendant. | Case No. 22-cr-00429-VC-1<br><br>**ORDER ON MOTIONS IN LIMINE**<br>Re: Dkt. Nos. 43, 44, 49 |

　　　　The following order adjudicates the outstanding motions in limine, except for the issues related to the evidence from the March 2023 Cellebrite extraction and the Instagram warrant. A separate order on that evidence will be forthcoming.

　　　　**1.　　Prior Conviction and Evidence of Incarceration and Stay-Away Condition**

　　　　The government's Motion in Limine No. 1 to admit evidence of Barnes' 2019 felon-in-possession conviction and the conduct underlying that conviction is denied. The defense's Motion in Limine No. 2(A) to exclude that evidence is granted.

　　　　"Evidence of prior criminal conduct may be admitted [under Rule 404(b)] if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." *United States v. Hankins*, 94 F. App'x 507, 509 (9th Cir. 2004) (quoting *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)).

　　　　The government argues that the conviction and conduct go to Barnes' knowledge of guns and lack of mistake or accident in possessing the gun in this case. But Barnes has disavowed the

argument that he has never held a real gun, and he has further agreed that he will not argue this was a case of mistaken or unintentional possession. Given those concessions, "any inferences that could be drawn about [Barnes'] general knowledge of guns…[are] immaterial to the ultimate question of whether [he] knowingly possessed the specific handgun at issue in this case." *Hankins*, 94 F. App'x at 509; *see also id.* at 510 ("Had Hankins claimed that he had never, at any time, possessed a gun, the March 17, 2001 incident would have been relevant. However, Hankins only disputed that he knowingly possessed the Ruger handgun. In this context, the evidence of Hankins's prior bad act involving a different gun was not sufficiently similar to 'furnish the link' to the crime charged.").

Consistent with this ruling, and as discussed more fully at the pretrial conference, the government may offer evidence that Barnes' court docket, federal probation ID card, inmate ID card, and a pill bottle from the Bureau of Prisons were found at 42 Brookdale to show that Barnes lived there. The government may also offer evidence that Barnes was incarcerated between 2019 and 2022. That evidence allows the government to tell its story of the case, and it supports the government's assertion that Barnes was living at 42 Brookdale when the gun was found there (which, in turn, supports the government's assertion that the gun belonged to Barnes). On the specific facts of this case, the probative value of that evidence outweighs the prejudice that might arise when the jury learns that Barnes was in prison. This is particularly true given that the jury will already hear that Barnes is a felon, and, as discussed in the next paragraph, that he was on supervised release with a condition that he stay away from Sunnydale.

Barnes did not file a motion to specifically exclude testimony that he was on supervised release and that he was required to stay away from Sunnydale as a condition of that release, but he appeared to object to such testimony at the pretrial conference. It is difficult to understand how Barnes could dispute the admissibility of this testimony. A big issue in the case is whether Barnes lived at 42 Brookdale. At trial, he will point to the fact that he registered different addresses (outside of Sunnydale) with the probation office. The government is obviously entitled to respond by arguing that Barnes registered different addresses with probation to avoid being

caught for violating the stay-away condition.

### 2. Probation Officer's Identification of Barnes

At the pretrial conference, the government stated that it would ask Barnes' probation officer to identify Barnes in certain photos and videos, and Barnes objected. In some contexts, "[u]se of lay opinion identification by policemen or parole officers is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution." *United States v. Butcher*, 557 F.2d 666, 670 (9th Cir. 1977). Such testimony can create a danger of unfair prejudice because it suggests the defendant is "a person subject to a certain degree of police scrutiny." *United States v. Henderson*, 241 F.3d 638, 651 (9th Cir. 2000), *as amended* (Mar. 5, 2001) (quoting *Butcher*, 557 F.2d at 669). That concern is not present here because the jury will learn that Barnes was on supervised release whether or not the probation officer identifies him in the photos and videos.

### 3. Barnes' Prior Statements

The government's Motion in Limine No. 2 to admit certain prior statements made by Barnes is granted in part and denied in part.

**a.    2012 Statement.** First, the government seeks to admit a statement made by Barnes in 2012 that he knew he was supposed to be living on Treasure Island given a stay-away order, but that he nonetheless lived in Sunnydale on Blythdale Avenue. The government has not offered any clear non-propensity purpose for this statement, so it is excluded under Rule 404(b) and Rule 403.

**b.    2019 Statement.** The government next seeks to admit a statement made by Barnes in 2019 in a recorded interview with Daly City Police Officers in which he stated that his house is "42 Brookdale." If Barnes stipulates to the fact that he lived at 42 Brookdale in 2019, this statement is excluded under Rule 403.

**c.    2013 Statement.** Finally, the government says that it may seek to admit a statement in which Barnes identified himself as "James Freeman" to police. The defense argues this evidence should be excluded under Rule 404(b) and Rule 403. The government has not

3

explained how this statement is material or relevant, and so the statement is excluded. This ruling may be revisited at trial depending on the case presented by the defense.

### 4. Gang Affiliation and Sergeant Dudley's Proposed Expert Testimony

The defense's Motion in Limine No. 2(D) to exclude evidence of Barnes' alleged gang affiliation is granted in part and denied in part. The defense's Motion in Limine No. 4(C) to exclude the expert testimony of Sergeant Dudley is granted.

The government may offer evidence related to Spunkz's shooting, including that Spunkz was allegedly affiliated with the Down Below Gangsters, that he was shot by the Towerside gang, and that the Towerside gang also shot Barnes. The government may also offer evidence suggesting that Barnes was using Instagram to threaten the Towerside gang. Finally, the government may offer general evidence about the Down Below Gangsters and Towerside gangs' territories and years of activity. This evidence is probative of Barnes' ownership of the Instagram account, his motive, and the context of the case and the investigation. The government has offered an adequate foundation for this evidence, and it is not excluded under Rule 404(b) because it is "inextricably intertwined" with the charged crime, and it is offered for a non-propensity purpose. *See United States v. Loftis*, 843 F.3d 1173, 1178 (9th Cir. 2016). Given its probative value, the evidence is not excluded under Rule 403.

The government may not offer photos or videos from Barnes's phone that allegedly show Barnes flashing gang signs. Those photos and videos are only marginally helpful to the jury, and their admission would be unduly prejudicial. But if these photos and videos were posted to the Instagram account, they are not excluded. The fact that the photos and videos were posted makes them probative of Barnes' ownership of the account, which is relevant to his possession of the charged firearm. In any event, there is no need for the government to offer testimony about any gang signs. For similar reasons, the government may not elicit explicit testimony saying that Barnes was himself a gang member, and it may not offer any evidence of Barnes' alleged nicknames unless necessary to prove identity.

Given the above, Sergeant Dudley's proposed expert testimony is excluded. An officer

need not be qualified as an expert to offer testimony about their investigation into a homicide, their personal knowledge that the homicide was gang-related, their personal knowledge that someone interacts with gang members, or their personal knowledge of the territories of gangs. The proposed testimony that truly involves expertise within the meaning of Rule 702—for example, about gangs' use of social media and the meaning of different slang terms—will not be helpful to the jury, and it is unfairly prejudicial. This case is about Barnes' possession of the gun and ammunition, not his alleged affiliation with the Down Below Gangsters, and allowing in any expert testimony on gangs risks drawing an undue amount of attention to the issue. Overall, any lay testimony about gang involvement will be strictly limited to that which is necessary for the government to tell its full story, establish identity, or establish motive for possession of the gun. The Court will cut off gang-related testimony the moment it starts to play more than a minor role in the government's presentation.

Expert testimony would be needed to interpret gang-related slang (e.g., "I'm on one"), so consistent with this ruling, the government should not offer any interpretations of Barnes' alleged use of slang. The jury does not need to receive an interpretation of such slang to determine if Barnes is guilty of the crime of being a felon in possession of a firearm.

5. **Late Disclosed Discovery**

The defense's motion for a discovery cut-off date and Motion in Limine No. 1 to exclude late disclosed discovery are denied in part and granted in part. Any evidence produced on April 4 will not be excluded on timeliness grounds. Any other evidence produced between April 4 and the pretrial conference will not be excluded on timeliness grounds, unless the defense can show some prejudice will result. The Court will address the evidence from the Instagram warrant in a further ruling.

6. **Evidence from Instagram and Barnes' Phone**

The defense's Motion in Limine No. 2(B) and 2(C) to exclude certain evidence from Instagram and from Barnes' phone is granted in part and denied in part.

The government has offered "sufficient proof" that a "reasonable juror could find" that

5

"i_do_it_fo_spunkz_and_yase" was Barnes' account, so the evidence is not excluded for lack of foundation under Rule 901. *United States v. Pluta*, 176 F.3d 43,49 (2d Cir. 1999). The request for an evidentiary hearing is denied, but the defense may renew its Rule 901 objection at trial if they believe the government has not offered a proper foundation for the Instagram evidence at that time.

As discussed at the pretrial conference, the government may admit photos and videos from Instagram that show the charged gun, Barnes, or some connection to 42 Brookdale (including photos and videos that show the Sunnydale area more generally). That evidence is highly probative of Barnes' control of the gun and the account, so it is not excluded under Rule 404(b) or Rule 403. Any photos or videos from Instagram that depict other guns but do not depict the charged gun, Barnes, or 42 Brookdale are excluded under Rule 404(b) and Rule 403. That includes the photos of the tan gun in Exhibit 20 and Exhibit 22. The government should edit Exhibit 37 to omit the beginning of the clip that allegedly shows another gun, but the remainder of the video is admissible. Exhibit 24 is not excluded because the government has offered a reasonable basis for believing that it depicts Barnes (and it also depicts the charged gun).

If any of the videos include potentially prejudicial music—such as rap lyrics referencing guns or gang activity—the government must mute the audio. The government must also redact any lyrics, titles of songs, or album covers referencing guns or violence or gangs that appear on screen. The government does not need to redact other text added to the photos or videos.

To the extent the government seeks to introduce photos or videos taken directly from Barnes's phone, the mere fact that the photo or video shows Barnes does not render it admissible. The government must articulate a theory of relevance, as they did with Exhibit 76, and the photos and videos must not be unfairly prejudicial for some other reason (like depicting gang symbols. If a photo or video taken from his phone shows him with the gun or in the Sunnydale area, it will be admissible.

At the pretrial conference, the government said that the majority of the photos and videos were taken from the Instagram account by Officer Naser or from Barnes' phone during the July

6

2022 Cellebrite extraction, but a few photos and videos were only discovered during the March 2023 Cellebrite extraction. The Court will decide whether to exclude the photos and videos from the March 2023 Cellebrite extraction in a separate ruling.

### 7. Special Agent Centofranchi's Expert Testimony

The defense's Motion in Limine No. 4(B) to exclude Special Agent Centofranchi's expert testimony is denied. Centofranchi's expert report adequately identifies the bases of his opinion: his physical examination of the gun and ammunition, ATF's list of firearms manufacturers and marking variances, ATF's ammunition manufacturers database and resource information, and other published resources including the *Blue Book of Gun Values and Gun Traders Guide*. The expert disclosure—which incorporates the report—is sufficient "for counsel to frame a *Daubert* motion or other motion in limine, to prepare for cross-examination, and to allow a possible counter-expert to meet the purport of the case-in-chief testimony." *United States v. Cerna*, No. CR 08-0730 WHA, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010).

The defense also argues that Centofranchi's testimony violates the Confrontation Clause because he will merely convey information he learned from records, and the creator of those records will not be available for cross-examination. The Ninth Circuit allows expert testimony regarding both the identify of a gun manufacturer and the location of the manufacturer. *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991), *as amended* (Oct. 1, 1991). But "an expert exceeds the bounds of permissible expert testimony and violates a defendant's Confrontation Clause rights when he is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation." *United States v. Vera*, 770 F.3d 1232, 1237 (9th Cir. 2014) (quotations and citations omitted). Based on Centofranchi's expert report, it does not seem that he will serve as a "conduit" for the hearsay contained in the sources he consulted. Rather, he has "distilled and synthesized" the information he learned from various sources: his examination of the gun and ammunition and his review of multiple publications. *Id.* at 1239; *see also United States v. Thompson*, 417 F. App'x 256, 257–58 (4th Cir. 2011). If Centofranchi's testimony at trial

suggests that he is merely transmitting the information contained in the other sources, the defense may renew its objection at that time.

### 8. Reference to Jury Nullification and Punishment

The government's Motion in Limine No. 3 to exclude reference to sentencing, punishment, and jury nullification is granted.

### 9. Good Faith Basis for *Henthorn* Inquiry

The government's Motion in Limine No. 4 to require a good-faith basis for any *Henthorn* inquiry is granted.

### 10. Affirmative Defenses

The government's Motion in Limine No. 5 to exclude any undisclosed affirmative defenses is granted.

### 11. Argument as to Charging Other Firearms

The defense's unopposed Motion in Limine No. 3 to exclude evidence or argument regarding why any other firearm was not charged is granted.

### 12. Designate Government Witnesses as Under Defense Subpoena

The defense's unopposed Motion in Limine No. 5 to designate government witnesses as under defense subpoena is granted.

### 13. Exclude Government Witnesses; Presence of Case Agent and Defense Investigator

The defense's Motion in Limine No. 6 and No. 7 to exclude all government witnesses from trial proceedings and exempt the defense investigator from any exclusion orders is granted in part and denied in part. The government's case agent and the defense investigator may be present during trial, and the other witnesses are excluded.

### 14. Disclosure of *Henthorn*, *Brady*, *Giglio*, and Jencks Act Materials

The defense's Motion in Limine No. 8 to require disclosure of *Henthorn*, *Brady*, *Giglio*, and Jencks materials is granted. The government is reminded of its obligations to disclose these materials.

**IT IS SO ORDERED.**

Dated: April 21, 2023

VINCE CHHABRIA
United States District Judge